IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:21-cr-00050-CMA

UNITED STATES OF AMERICA,

 Plaintiff,

v.

1. DAVID JOSH SERMOS,

 Defendant.

## PLEA AGREEMENT

The United States of America (the government), by Jason R. Dunn, United States Attorney for the District of Colorado, through Assistant United States Attorneys Wayne Paugh and Brad Giles, and the defendant, David Josh Sermos, personally and by counsel, Gary Lozow, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I. AGREEMENT

**A.**  **Defendant's Obligations:**

The defendant agrees to waive his right to indictment and to plead guilty to Count One of the Information, charging a violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vii), distribution and possession with intent to distribute 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled

substance. The defendant will also admit to certain forfeitures and waive certain appellate rights, as explained in greater detail below.

**B.     Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(B). In exchange for the defendant's plea of guilty and waiver of certain appellate rights, the government agrees to: (1) recommend the Court give the defendant full credit for acceptance of responsibility per United States Sentencing Guidelines (USSG) §3E1.1, unless the defendant engages in conduct that qualifies for the obstruction of justice enhancement under §§3C1.1 and 3E1.1, comment (note 4) between the time of the guilty plea and sentencing; (2) file a motion for a downward variance of one Offense Level; and (3) recommend a sentence at the bottom of the guideline range.

**C.     Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 23; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack including, but not limited to, a motion brought under 28 U.S.C. § 2255. This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

Consistent with his obligations under this Agreement, and pursuant to Title 21, United States Code, Section 853, the defendant knowingly and voluntarily waives his rights and forfeits to the United States the following proceeds obtained directly or indirectly as a result of the offense: $111,720.00 in United States currency recovered from the defendant's home and $238,400.00 in United States currency recovered from the defendant's Alpine Bank self-service storage box #103.

Although the defendant agrees to the admission of certain forfeiture allegations as outlined herein, this agreement does not express or imply, by either party, a global resolution as to any other forfeiture proceedings (civil or criminal) at the federal or state level that may be either ongoing or later initiated in association with the course of conduct as outlined herein.

...

...

...

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered are as follows:[1]

*First:* The defendant knowingly or intentionally possessed a controlled substance as charged;

*Second:* The substance was in fact a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance;

*Third:* The defendant distributed it or possessed the substance with the intent to distribute it; and

*Fourth*: The amount of marijuana was at least 100 kilograms.

## III. STATUTORY PENALTIES

The statutory penalty for Count 1 is not less than 5 years and not more than more than 40 years imprisonment; not more than a $5,000,000 fine; not less than four years and up to a lifetime of supervised release; and a $100 special assessment fee.

A violation of any condition of supervised release may result in a separate prison sentence and additional supervision.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

---

[1] *10th Circuit Pattern Jury Instruction 2.85, Controlled Substances (2018).*

4

## V. **STIPULATION OF FACTS**

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree as follows:

The defendant applied for and received multiple state licenses to launch companies for the purpose of selling Marijuana Infused Products (MIP) in the State and District of Colorado.  The defendant started his first business called *Mega Giant* in 2014 in Denver, Colorado and legitimately sold 10,355 units of marijuana edible products during the 2014-15 time period.  In June 2016, the defendant founded *Flatirons General Service Provider* in Boulder, Colorado and purchased over 1,200 pounds of marijuana through that state license before lawfully selling the business in September 2017.  In June 2018, the defendant founded *Colorado General Service Provider* and purchased

5

over 2,883 pounds of marijuana through the state license up to January 2020. In all MIP ventures, the defendant was the sole proprietor.

From June 30, 2016 through January 29, 2020 (over 3.5 years), the defendant legally purchased at total of 4,084 pounds (1,854 kilograms) of marijuana, a Schedule I controlled substance, from local Colorado marijuana dispensary businesses. The defendant spent a total of $4,231,000 (approximately $1,035 per pound) to purchase that amount of marijuana product. Over that same time period, the defendant did not have any legitimate sales or receipts of MIP products sold. The defendant illegally sold at least half of the raw marijuana product purchased, or 2,042 pounds (927 kilograms), to street contacts for re-sale or private use in violation of federal criminal law. Defendant knew or should have known that at least some of the diverted marijuana would be shipped out of state. A portion of the marijuana product the defendant purchased was destroyed through defendant's experimentation with the marijuana infusion process. The defendant was aware of state law requirements to report any marijuana destruction to state authorities for purposes of tracking and complied with this obligation. The defendant was also aware of state law requirements to report any legitimate sales of MIPs.

The defendant's illegal marijuana sales supported defendant's lifestyle and standard of living which included the November 2019 cash purchase of a 2020 Toyota RAV4 sport utility vehicle and a 2018 BMW 320xi sedan and also fully financing private school for his children. A lawful search warrant executed on defendant's home and property yielded $111,720.00 in United States currency bundled inside bags located in defendant's laundry room and garage. Additionally, evidence was obtained that led to

the finding of $238,400.00 in United States currency located in the defendant's Alpine Bank self-service storage box #103. All of this currency constitutes proceeds from the illegal sale and distribution of marijuana.

## VI. ADVISORY GUIDELINE COMPUTATION AND 18 U.S.C. § 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A. The base guideline is §2D1.1(a)(5), with a base offense level of **28** because the conduct involved at least 100 kilograms of marijuana but less than 1,000 kilograms of marijuana.

B. There are no victim-related, obstruction, or multiple count adjustments.

C. Subject to a qualifying criminal history score, the United States argees to stipulate that the defendant meets the criteria set forth in subsections (2) - (5) of USSG §5C1.2(a) (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases, otherwise known as "Safety Valve") and that the defendant has complied with its requirements. Therefore, the defendant would be eligible for a **2-level decrease** to the

7

defendant's base offense level as required under U.S.S.G. §2D1.1(b)(18). Prospectively applying that decrease would result in a total offense level **26**.

D.  <u>Acceptance of Responsibility</u>: The defendant should receive a **3-level reduction** for acceptance of responsibility under §3E1.1, resulting in a total offense level **23**.

E.  <u>Variance</u>: The government will make a motion for a downward variance not to exceed one Offense Level from the prevailing guideline range to reflect the defendant's aberrant criminal behavior, his lack of significant criminal history, his family circumstances and his status as a non-violent offender.

F.  <u>Criminal History Category</u>: The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's Criminal History Category would be **I**.

G.  Assuming the criminal history facts known to the parties are correct, the career offender/criminal livelihood/armed career criminal adjustments do not apply.

H.  <u>Imprisonment</u>: The advisory guideline range of imprisonment for Count 1 resulting from an offense level of **23** and a Criminal History Category I is **46 – 57 months**. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level for Count 1 could conceivably result in a range from 46 months (bottom of Category I) to 115 months (top of Category VI). The guideline range would not exceed, in any case, the statutory maximum applicable to the count of conviction.

If the government's motion for a downward variance of one Offense Level were to be granted for the reasons outlined above, the resulting guideline range would be **41-51 months**.

I.   <u>Fine</u>:  Pursuant to guideline §5E1.2 and 21 U.S.C. §841(b)(1)(A), assuming the estimated offense level of **23**, the fine range for this offense would be **$20,000 to $5,000,000**, plus applicable interest and penalties.  If the government's motion for a downward variance of one Offense Level were to be granted, the resulting fine range would be **$15,000 to $5,000,000.**

J.   <u>Supervised Release</u>:  Pursuant to guideline §5D1.2 and 21 U.S.C. § 841(b)(1)(A), if the Court imposes a term of supervised release, that term is **at least 4 years and up to life**.

The parties understand that, although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines.  Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII. ENTIRE AGREEMENT

This document (including any supplements) states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 5.24.21

David Josh Sermos
Defendant

Date: 5/25/21

Gary Lozow
Attorney for Defendant

Date: 5/25/21

Wayne Paugh, Assistant U.S. Attorney
Attorney for the Government